IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

CHRISTOPHER RANDOLPH GISH,

                Petitioner,

v.

MICHAEL DITTMANN,

                Respondent.

OPINION & ORDER

15-cv-730-jdp

---

Pro se petitioner Christopher Randolph Gish is currently in the custody of the Wisconsin Department of Corrections at the Columbia Correctional Institution, following his plea of guilty and conviction of first-degree reckless homicide in Milwaukee County Case No. 12-CF-3564. Gish admits that he killed his girlfriend. But he seeks a writ of habeas corpus under 28 U.S.C. § 2254, arguing that the Wisconsin Court of Appeals unreasonably rejected his claim that his trial counsel was ineffective because counsel failed to investigate and inform Gish of a potential defense of involuntary intoxication. If Gish had known about that defense, he says, he wouldn't have accepted the state's plea deal.

Gish's petition is now fully briefed and ready for a decision. After considering the parties' submissions, I conclude that the Wisconsin Court of Appeals unreasonably applied federal law regarding ineffective assistance of counsel. I will hold an evidentiary hearing to determine whether Gish is entitled to habeas relief, and I will appoint counsel to represent him at the hearing.

BACKGROUND

I draw the following facts from the petition, briefs, and state court records.

In the early morning of July 14, 2012, police found Christopher Gish wandering near General Mitchell Airport in Milwaukee, Wisconsin, after he had crashed his girlfriend's minivan. Soon after, police found Gish's girlfriend, Margaret Litwicki, dead in Gish and Litwicki's bedroom. She had been stabbed several times in the head, neck, and chest. Upon questioning, Gish admitted to stabbing Litwicki, explaining that he became upset when she told him she was having an affair and threatened to leave him and take their children with her.

Gish was charged with first-degree intentional homicide in Milwaukee County Case No. 12-CF-3564. He was appointed a lawyer, Nathan Opland-Dobs, to represent him. On November 19, 2012, Gish pleaded guilty to a reduced charge of first-degree reckless homicide. The circuit court sentenced Gish to 40 years' confinement and 20 years' extended supervision. Gish did not file a postconviction relief motion.

On direct appeal, Gish's appointed counsel, Michael Backes, filed a no-merit report under Wis. Stat. § (Rule) 809.32, which Gish contested. Gish contended that Opland-Dobs was ineffective for failing to investigate and inform Gish of a potential involuntary intoxication defense under Wis. Stat. § 939.42(1). He pointed to police reports that Gish was found "wandering on the train tracks[,] soaking wet[,] unsteady on his feet[, and] unable to answer any questions" shortly after the murder, leading the first responders to take him to the hospital, where he continued to appear "disoriented." Dkt. 12-5, at 29, 34. The reports indicate that when Gish began responding to the paramedics' questions, he said things like "All I saw was red," "I blacked out," and "She's upstairs." *Id.* at 29. When asked where he was, Gish responded, "It's midnight. You are in my bedroom, why are you in my room?" *Id.* at 35. And

records of the interrogation indicated that Gish said "he must have blacked out" because he didn't remember how he got to the hospital after going to sleep the previous night. *Id.* at 40. But Gish did remember taking Lamictal hours before the murder and Xanax a day or two before that. *Id.* at 38. Once the interrogator told Gish what happened, he began to remember the events of the previous night. He explained: "[I] lost my mind and I felt at the time it was the right thing to do." *Id.* at 44.

Had Opland-Dobs investigated Gish's symptoms, Gish argued, he would have discovered that five days before the murder, a doctor had prescribed Gish Xanax and Lamictal and instructed him to take Xanax at a dose two to four times the recommended amount for a first-time user. Gish provided pharmacy records that confirm these prescriptions. *See id.* at 81. Gish points to several medical reference sources indicating that side effects of Xanax include fear, confusion, hallucination, rage, disinhibition, hostility, and mania. *See id.* at 53–70. Had Opland-Dobs told him that he could mount an involuntary intoxication defense, Gish argued, he wouldn't have accepted the plea deal that he did.

The Wisconsin Court of Appeals acknowledged that "[t]he effects of prescription drugs may form the basis for an involuntary intoxication defense where they are taken according to prescription." Dkt. 12-7, at 6. But, it explained, the documents submitted by Gish in support of his argument (the pharmacy records and police reports) were outside the appeal record and therefore "not properly before" the court. *Id.* at 7. It went on, "In any event, we are not convinced that this issue has arguable merit." *Id.* It cited Backes's no-merit report concerning "the conclusory nature of the claimed effects of Xanax on Gish," *id.*, and reprinted one long passage from the no-merit report, which included the following argument: "Mr. Gish had no problem recalling the series of events leading up to his [']blind rage['] and the brutal stabbing

3

death of the victim. *Mr. Gish never claimed to have been in a drug induced stupor at anytime . . . . Mr. Gish . . . has never named a witness which would support his claim as to an intoxicated state of mind. No witness as to his taking Xanax, how much or at what time. No witness to any irrational conduct related to his past consumption of any such drug.*" Id. at 7–8 (first alteration in original). The court concluded, "According to Gish's appellate counsel, a claim that Gish's trial counsel was ineffective for not investigating is without merit 'in that there wasn't anything to investigate.' Based on the record before us, we agree." *Id.* at 8.

The Wisconsin Supreme Court denied Gish's petition for review. Gish now seeks federal habeas corpus relief under 28 U.S.C. § 2254.

ANALYSIS

Gish contends that he is entitled to habeas relief because the Wisconsin Court of Appeals unreasonably applied Supreme Court precedent concerning ineffective assistance of counsel when it concluded that his ineffective assistance claim was without any arguable merit. Section 2254(d) allows courts to grant state prisoners' petitions for habeas corpus when the state court's adjudication of the merits of a claim for relief "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law." But before reviewing Gish's claim under § 2254(d), I must address any potential procedural grounds barring review.

**A. Procedural bars**

I'll begin the discussion of potential procedural bars with an explanation of the procedural posture presented in this case. Criminal defendants in Wisconsin have "a statutory right to seek postconviction relief through a postconviction motion or an appeal." *State ex rel.*

*Kyles v. Pollard*, 2014 WI 38, ¶ 21, 354 Wis. 2d 626, 847 N.W.2d 805. Postconviction motions are "filed in the trial court in which the conviction was adjudicated" and concern claims such as ineffective assistance of counsel—claims that are based on matters outside the trial court record. *Page v. Frank*, 343 F.3d 901, 905–06 (7th Cir. 2003). If the trial court denies the postconviction motion, "the defendant may then appeal to the Court of Appeals of Wisconsin." *Id.* at 906. The subsequent appeal may encompass issues raised during trial as well as issues raised in the postconviction motion. *Id.* Defendants are "entitled to counsel while seeking relief through a postconviction motion . . . or a direct appeal." *Kyles*, 2014 WI 38, ¶ 23. Appointed postconviction counsel must "confer with the defendant regarding the defendant's right to appeal, the potential merit or lack thereof in pursuing either a postconviction motion or appeal, and if applicable, the availability of the 'no-merit option.'" *State ex rel. Ford v. Holm*, 2004 WI App 22, ¶ 4, 269 Wis. 2d 810, 676 N.W.2d 500.

The "no-merit option" is available when "appointed counsel concludes that an appeal or motion for postconviction relief 'would be frivolous and without any arguable merit.'" *Id.* ¶ 5 (quoting Wis. Stat. § (Rule) 809.32(1)(a)). It is constitutionally required. *See Anders v. California*, 386 U.S. 738 (1967). Wisconsin's no-merit procedures are laid out in Wisconsin's Rule of Appellate Procedure 809.32. When appointed counsel determines that seeking postconviction relief would be meritless, the defendant has three options: have the appointed attorney file a no-merit report, close the case without an appeal, or withdraw so that the defendant may proceed without an attorney or with another attorney retained at the defendant's expense. Rule 809.32(1)(b). If the defendant chooses the no-merit report motion, appointed counsel must file a report that "identif[ies] anything in the record that might arguably support the appeal and discuss the reasons why each identified issue lacks merit."

Rule 809.32(1)(a). The defendant may file a response. Rule 809.32(1)(e). The appeals court must then review the report and response. If it "determines that further appellate proceedings would be frivolous and without any arguable merit, [it] shall affirm the judgment of conviction." Rule 809.32(3). But if the defendant and counsel "allege disputed facts regarding matters outside the record, and if the court determines that the [defendant's] version of the facts, if true, would make resolution of the appeal under sub. (3) inappropriate, the court shall remand the case to the circuit court for an evidentiary hearing and fact-finding on those disputed facts before proceeding to a decision under sub. (3)." Rule 809.32(1)(g); *see State v. Aaron Allen*, 2010 WI 89, ¶ 88 & n.9, 328 Wis. 2d 1, 786 N.W.2d 124 ("[T]he court of appeals in a no-merit appeal should identify issues of arguable merit even if those issues were not preserved in the circuit court . . . ."). This is the procedural posture that the Wisconsin Court of Appeals encountered in Gish's case: Gish's appointed counsel filed a no-merit report identifying any perceived issues of arguable merit; Gish filed a response, asserting that a claim of ineffective assistance of counsel would be meritorious and including material from outside the record; Gish's counsel filed a supplemental no-merit brief addressing Gish's arguments.

With this procedural posture in mind, I turn now to a discussion of the potential procedural bars in this case. A claim for habeas relief is barred from federal review entirely when "the last state court that rendered judgment '"clearly and expressly" states that its judgment rests on a state procedural bar.'" *Lee v. Foster*, 750 F.3d 687, 693 (7th Cir. 2014) (quoting *Harris v. Reed*, 489 U.S. 255, 263 (1989)). "[U]nless a state opinion contains a 'plain statement' that it relied upon an independent and adequate state law ground, a presumption arises that the federal claim was reached." *Willis v. Aiken*, 8 F.3d 556, 561 (7th Cir. 1993) (quoting *Michigan v. Long*, 463 U.S. 1032, 1042 (1983)); *accord Richardson v. Lemke*, 745 F.3d

258, 269 (7th Cir. 2014). To bar federal habeas review, the state procedural ground must be "independent of the federal question and adequate to support the judgment." *Lee*, 750 F.3d at 693 (quoting *Coleman v. Thompson*, 501 U.S. 722, 729 (1991)). "An independent state ground will be found 'when the court actually relied on the procedural bar as an independent basis for its disposition of the case.' A state law ground is adequate 'when it is a firmly established and regularly followed state practice at the time it is applied.'" *Id.* (quoting *Thompkins v. Pfister*, 698 F.3d 976, 986 (7th Cir. 2012)). "A basis of decision applied infrequently, unexpectedly, or freakishly may be inadequate, for the lack of notice and consistency may show that the state is discriminating against the federal rights asserted." *Page*, 343 F.3d at 909 (quoting *Prihoda v. McCaughtry*, 910 F.2d 1379, 1383 (7th Cir. 1990)).

Respondent argues that the appeals court relied on *State v. John Allen*, 2004 WI 106, 272 Wis. 2d 568, 682 N.W.2d 433, as an independent and adequate state procedural ground for rejecting Gish's ineffective assistance claim. *John Allen* held that a state trial court must hold an evidentiary hearing on a defendant's postconviction relief motion if "the motion on its face alleges sufficient material facts that, if true, would entitle the defendant to relief," but that a court has discretion to deny a hearing "if the motion does not raise facts sufficient to entitle the movant to relief, or presents only conclusory allegations, or if the record conclusively demonstrates that the defendant is not entitled to relief." 2004 WI 106, ¶ 9. The appeals court did not cite *John Allen* at all in its opinion, nor did it refer to an evidentiary hearing. And *John Allen* concerned a postconviction relief motion filed in the trial court, whereas Gish's case concerns a no-merit report originally filed before the appeals court, so it appears that *John Allen* would be inapplicable. The only arguable link to *John Allen* is the appeals court's use of the word "conclusory" to describe the "claimed effects of Xanax on Gish," Dkt. 12-7, at 7, but that

7

is far from a plain statement that the court actually relied on *John Allen* as an independent basis for its disposition of the case. So *John Allen* does not procedurally bar Gish's federal habeas claims.

But there is another procedural bar at work in the appeals court's decision. Although procedural default is an affirmative defense that can be waived, and respondent only raised *John Allen* as a procedural bar, I have discretion to inquire into other potential procedural bars *sua sponte*. *See Perruquet v. Briley*, 390 F.3d 505, 517–18 (7th Cir. 2004). In Gish's case, the appeals court explained that the police reports, pharmacy records, and information concerning the side effects of Xanax that Gish presented in support of his response to the no-merit report were "outside the record" and "not properly before" the court. Dkt. 12-7, at 7. It cited *State v. Aderhold* for the proposition that "reviewing courts are limited to the record, and are bound by the record." 91 Wis. 2d 306, 284 N.W.2d 108, 112 (Ct. App. 1979). Then, it concluded that "[b]ased on the record before" it, Gish's ineffective assistance claim was "without merit." Dkt. 12-7, at 8. *Aderhold* is an *independent* state procedural ground for the appeals court's resolution of Gish's claims, but it does not bar federal habeas review because it is not *adequate* to support the appeals court's judgment. Application of *Aderhold* to a response to a no-merit report is both unexpected and infrequent, as described in *Page*.

*Aderhold* is non-objectionable in general: in the typical appeal, the appeals court cannot consider matters outside the record. But the no-merit procedure is not the typical appeal, and in that context, *Aderhold* runs contrary to *Anders* and Rule 809.32(1)(g), which instructs the appeals court to "identify issues of arguable merit even if those issues were not preserved in the circuit court."[1] *Aaron Allen*, 2010 WI 89, ¶ 88 & n.9. In *Aaron Allen*, the Wisconsin Supreme

---

[1] The appeals court never cited *Anders* or Rule 809.32, other than a passing citation when

8

Court addressed the Seventh Circuit's statement in *Page* that "[i]t is clear that Wisconsin law would not have permitted" a criminal defendant to assert an ineffective assistance of counsel claim in response to a no-merit brief "without its having been raised initially before the trial court," implying a reliance on *Aderhold*. 343 F.3d at 908. *Aaron Allen* explained that Wisconsin law *does* permit a criminal defendant to assert an ineffective assistance claim in response to a no-merit report because "the broad scope of review mandated by *Anders* suggests that the court of appeals in a no-merit appeal should identify issues of arguable merit even if those issues were not preserved in the circuit court, especially where the ineffective assistance of postconviction counsel was the reason those issues were not preserved for appeal." 2010 WI 89, ¶ 88. *Aaron Allen* implicitly rejects *Aderhold* and embraces Rule 809.32(1)(g) in the no-merit context.

Post-*Aaron Allen*, the appeals court regularly applies Rule 809.32(1)(g), not *Aderhold*, when reviewing no-merit reports. It recently explained, "We normally decline to address an ineffective assistance of trial counsel claim if the claim was not raised in a postconviction motion in the circuit court [i.e., if the basis for the claim is not in the record]. However, because appointed counsel asks to be discharged from the duty of representation, we must determine whether such a claim would have sufficient merit to require appointed counsel to file a postconviction motion and request a *Machner* hearing." *State v. Serra*, No. 14-AP-1717, 2016 WL 8605328, at *3 (Wis. Ct. App. May 18, 2016). For example, in *State v. Vaughn*, Vaughn challenged his appellate counsel's no-merit report, arguing that his trial counsel was ineffective because counsel failed to inform him of a potential affirmative defense and that had he known

---

explaining what a no-merit report is. *See* Dkt. 12-7, at 1 ("Appellate counsel, Michael J. Backes, filed a no-merit report pursuant to Wis. Stat. Rule 809.32 and *Anders v. California*, 386 U.S. 738 (1967).").

9

about the defense, he would not have pleaded but would have insisted on going to trial. No. 14-AP-2652, 2015 WL 13135134, at *1 (Wis. Ct. App. June 17, 2015). The appeals court explained that Vaughn had "asserted a fact outside of the record, the veracity of which this court cannot make any judgment, and therefore we must assume is true," citing Rule 809.32. *Id.* at *2. It continued, "Because appointed counsel's no-merit report seeks counsel's discharge from the duty of representation, we must independently determine whether the defendant's ineffective assistance claim has sufficient merit to require appointed counsel to file a postconviction motion and request a *Machner* hearing." *Id.* (footnote omitted). Because the no-merit report failed "to demonstrate why Vaughn would not be entitled to further postconviction proceedings on his claim," the appeals court rejected the no-merit report and set a new deadline for appellate counsel to file a postconviction motion. *Id.* In light of the plain language of Rule 809.32(1)(g) and the appeals court's application of the rule in *Vaughn*, its application of *Aderhold* when reviewing Gish's response to a no-merit report was, to say the least, unexpected. Because *Aderhold* was not an adequate ground for denial, it does not bar federal habeas review.

## B. Section 2254(d) review

The Antiterrorism and Effective Death Penalty Act (AEDPA), 28 U.S.C. § 2254, allows federal courts to grant habeas relief only when the state court's denial of relief "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented." § 2254(d). An "unreasonable application . . . must be 'objectively unreasonable,' not merely wrong; even 'clear error' will not suffice." *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014) (quoting *Kockyer v. Andrade*, 538 U.S. 63, 75 76

(2003)). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

Here, the Wisconsin Court of Appeals correctly identified the controlling two-part test for reviewing the ineffective assistance of counsel claims. Dkt. 12-7, at 6. First, Gish needed to show deficient performance, meaning that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Second, Gish had to demonstrate that the deficient performance caused him prejudice, which requires showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. In the context of a guilty plea, this means showing that there is a reasonable probability that, but for counsel's deficient performance, he would not have pleaded guilty but would have insisted on going to trial. *Lafler v. Cooper*, 566 U.S. 156, 163 (2012); *Moore v. Bryant*, 348 F.3d 238, 241 (7th Cir. 2003). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. "The chances of prejudice need be only better than negligible." *Julian v. Bartley*, 495 F.3d 487, 498 (7th Cir. 2007). The likelihood of success at trial is relevant to the prejudice inquiry. *See Hill v. Lockhart*, 474 U.S. 52, 59 (1985). But a petitioner's "claim that he would have insisted on going to trial . . . is enough." *Pidgeon v. Smith*, 785 F.3d 1165, 1173 (7th Cir. 2015) (quoting *Ward v. Jenkins*, 613 F.3d 692, 700 (7th Cir. 2010)).

Because the appeals court correctly identified the *Strickland* standard, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable."

11

*Harrington v. Richter*, 562 U.S. 86, 101 (2011). I am not in a position to evaluate the merits of Gish's ineffective assistance claim because the facts relevant to his claim have never been developed. *See Ward*, 613 F.3d at 698. "Given this posture, [my] inquiry is limited to whether [Gish] is entitled to an evidentiary hearing to try and develop facts that would support his petition." *Id.* (granting evidentiary hearing when the state trial and appellate courts denied the petitioner's motion for an evidentiary hearing on his ineffective assistance of counsel claim). Gish is entitled to a hearing only if (1) "he has alleged facts which, if proved, would entitle him to habeas relief" and (2) the failure to develop the factual basis for his claim was beyond his control. *Id.* (citing § 2254(e)(2), *Williams v. Taylor*, 529 U.S. 420, 432 (2000), and *Davis v. Lambert*, 388 F.3d 1052, 1059–60 (7th Cir. 2004)). In this case, these questions are one and the same: if Gish has alleged facts that, taken as true, would satisfy *Strickland*, then the Wisconsin Court of Appeals erred in not remanding his case to the trial court for an evidentiary hearing under Rule 809.32(1)(g) and the failure to develop the facts in an evidentiary hearing was not Gish's fault. So an analysis of Gish's petition boils down to one question: taking Gish's allegations as true, does he state an ineffective assistance of counsel claim?

Gish's ineffective assistance claim focuses on the statutory defense of involuntary intoxication, so I begin by examining that defense. At the time of Gish's arrest and conviction, Wis. Stat. § 939.42(1) read:

> An intoxicated or a drugged condition of the actor is a defense only if such condition . . . [i]s involuntarily produced and renders the actor incapable of distinguishing between right and wrong in regard to the alleged criminal act at the time the act is committed
> . . . .

The involuntary intoxication defense focuses not on the defendant's intent, but rather on whether the defendant was "incapable of distinguishing between right and wrong." *State v.*

12

*Anderson*, 2014 WI 93, ¶ 23, 357 Wis. 2d 337, 851 N.W.2d 760; *State v. Gardner*, 230 Wis. 2d 32, 601 N.W.2d 670, 673 (Ct. App. 1999). It "is available . . . to a defendant who takes his prescription medication as ordered." *Anderson*, 2014 WI 93, ¶ 33 n.12 (citing *Gardner*, 601 N.W.2d at 674).

The defense is triggered when the defendant "produce[s] *some evidence* that his intoxication had affected his ability to distinguish right from wrong." *Gardner*, 601 N.W.2d at 676 (emphasis added). "This evidence must be more than a mere statement that the defendant was intoxicated," and it "must be credible." *Id.* (quoting *State v. Strege*, 116 Wis. 2d 477, 343 N.W.2d 100, 105 (1984)). "The defendant must present evidence *both* that the intoxication was involuntarily *and* that it rendered him or her incapable of distinguishing right from wrong at the time the criminal act occurred." *State v. Alby*, 2001 WI App 146, ¶ 8, 246 Wis. 2d 761, 630 N.W.2d 276. For example, a Wisconsin trial court instructed the jury on the defense when the defendant shot and killed his wife several months after being prescribed an antidepressant that was not appropriate for his mental health condition, and known side effects of the antidepressant included "psychotic behaviors, mood swings or violence." *Laguna v. Schwochert*, No. 10-cv-609, 2014 WL 2612069, at *1 (E.D. Wis. June 11, 2014). But the appeals court has held that the defense is unavailable if the defendant "testified that she was not impaired at the time" of the offense, had a "clear recollection of the offense," and presented no evidence "that she was so intoxicated as to be unable to distinguish right from wrong," *State v. Deppiesse*, 2014 WI App 71, ¶ 13, 354 Wis. 2d 622, 848 N.W.2d 903; if the intoxication merely "'caused [the defendant] to lack judgment' and lowered his inhibitions," *State v. Eggenberger*, 2013 WI App 128, ¶ 14, 351 Wis. 2d 224, 838 N.W.2d 866; or if there is no evidence that the defendant

13

actually experienced the side effects that the medicine theoretically could cause, *see State v. Alswager*, 2011 WI App 75, ¶ 20, 334 Wis. 2d 145, 799 N.W.2d 928.

Once the defendant raises the defense, "the burden is on the state to prove the absence of the defensive matter to support a conviction for the crime charged." Wis. Criminal Jury Instructions § 775A Comments n.3 (2015). If the state does not meet its burden, "the result will be an acquittal on the charge." *Anderson*, 2014 WI 93, ¶ 25 (quoting 9 Christine M. Wiseman & Michael Tobin, *Wisconsin Practice Series: Criminal Practice and Procedure* § 17.25 (2d ed.)).

I turn now to an analysis of Gish's claim, keeping in mind that the ultimate question is not whether Gish's allegations, if true, would support an involuntary intoxication defense; the question is not even whether there is a reasonable probability that the trial court would have instructed the jury on the defense. Rather, the question is whether Gish's counsel erred in failing to investigate or inform him of the defense and whether there is a reasonable probability that Gish would not have pleaded guilty if he had known about the defense—that probability may exist even if the chances of succeeding on the defense would have been slim.

Here, the appeals court determined that Gish's ineffective assistance argument was without any arguable merit because "there wasn't anything to investigate" concerning the involuntary intoxication defense. Dkt. 12-7, at 8. This conclusion is puzzling in light of Gish's allegations. Police records available to Opland-Dobs indicate that Gish was taking prescription psychoactive medicine around the time of the crime and was found hours after the crime in a confused, delusional state. Gish told his interrogator that he blacked out, lost his mind, and thought that stabbing Litwicki "was the right thing to do." Dkt. 12-5, at 44. Upon reviewing these records, competent counsel would have investigated further to determine whether Gish

14

could raise involuntary intoxication as an affirmative defense. Upon investigation, counsel would have discovered that Gish was prescribed two to four times the recommended amount of Xanax, that known side effects of Xanax include fear, confusional state, hallucination, rage, disinhibition, hostility, and mania, and that "Xanax and Lamictal have been known to produce aggressive, and assaultive behavior, as well as temporary memory loss, and hostile behavior." Dkt. 14, at 18. Armed with "some evidence" that Gish took prescription medicine, that he was unable to distinguish right from wrong during the crime, and that there was a causal link between the two, competent counsel likely could have obtained a jury instruction on involuntary intoxication. At that point, the affirmative defense would have succeeded at trial unless the state proved beyond a reasonable doubt that Gish was *not* rendered unable to distinguish right from wrong by his medicine. Gish says that had he known about the affirmative defense, he would not have accepted the state's plea deal. Gish's allegations, which I must accept as true at this point in the proceedings, satisfy *Strickland*. Gish's claim is far from frivolous. The appeals court's conclusion that Gish's trial counsel was not arguably ineffective is objectively unreasonable.

Respondent argues that the defense would not have succeeded because Gish could remember events that took place before the crime; Gish could not name a witness who could testify about the effect of the medicine on Gish; and later on, Gish showed remorse for his crime. The state certainly could have raised these points at trial, but the ultimate issue is not whether the defense would have succeeded at trial, but whether, if Gish's counsel had investigated the affirmative defense and told Gish about it, it is reasonably probable that Gish would have refused to plead and insisted on going to trial. Taking all of Gish's allegations as

15

true, the answer is yes. So § 2254(d) does not bar habeas relief, and I will conduct an evidentiary hearing on Gish's ineffective assistance claim.

**C. Appointment of counsel**

Under Rule 8(c) of the Rules Governing § 2254 Cases, I must appoint counsel to represent a petitioner at an evidentiary hearing if the petitioner qualifies to have counsel appointed under the Criminal Justice Act, 18 U.S.C. § 3006A. Section 3006A(a)(2) requires me to determine that the appointment of counsel would serve "the interests of justice" and that the petitioner is "financially eligible." Two additional considerations are relevant to the interest of justice prong: whether the petitioner has attempted to obtain representation on his own, *Jackson v. County of McLean*, 953 F.2d 1070, 1073 (7th Cir. 1992), and whether the difficulty of the case exceeds the petitioner's ability to litigate his claims himself, *Pruitt v. Mote*, 503 F.3d 647, 655 (7th Cir. 2007). To determine a petitioner's competence to litigate his own case, the court considers his literacy, communication skills, education level, and litigation experience. *Id.*

To be financially eligible for appointment of counsel, Gish does not have to be indigent; he must demonstrate only that he is financially unable to obtain counsel. *United States v. Sarsoun*, 834 F.2d 1358, 1362 (7th Cir. 1987) ("The Criminal Justice Act . . . merely requires that a defendant be financially unable to obtain counsel—a lower standard than indigency."). Although Gish bears the ultimate burden of demonstrating his financial eligibility, "[a]ny doubts as to a person's eligibility should be resolved in the person's favor; erroneous determinations of eligibility may be corrected at a later time." Admin. Office of the U.S. Courts, Guide to Judiciary Policies and Procedures, Vol. 7, pt. A, § 210.40.30(b).[2] Gish qualified for a

---

[2] Available at http://www.uscourts.gov/rules-policies/judiciary-policies/cja-guidelines/chapter-2-

public defender during his state-court proceedings. He is now in prison, where his financial situation presumably has not improved. Applying the principles discussed above, I conclude that Gish is financially unable to obtain counsel.

I am also persuaded that appointing Gish counsel would serve the interests of justice. Gish's claim concerns complex medical issues, such as the effects of psychoactive medicines. He would have been entitled to counsel had a hearing on his ineffective assistance claim been conducted during state-court postconviction proceedings. So I will appoint counsel to represent him. Gish should be aware that if the court later finds that he is financially able to retain counsel, it may terminate the appointment of counsel as the interests of justice dictate, and also may direct him to reimburse his attorney for the cost of representation. § 3006A(c), (f).

Once counsel is appointed, the court will hold a status conference to open discovery and set a schedule for the completion of discovery, expert disclosures, and the evidentiary hearing.

---

ss-210-representation-under-cja.

## ORDER

IT IS ORDERED that the proceedings are STAYED pending appointment of counsel for petitioner Christopher Randolph Gish. Once counsel is appointed, a status conference will be held to establish a new schedule for resolution of the case.

Entered December 14, 2017.

BY THE COURT:

/s/
_____
JAMES D. PETERSON
District Judge